Jimmy Antonio BONILLA,
Petitioner—Appellant,

v.

Ana RAMIREZ–PALMER, Warden,
Respondent—Appellee.

No. 02–16374.
DC No. CV 00–20068 JF.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 23, 2004.*

Decided Dec. 1, 2004.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See*   Fed. R.App. P. 34(a)(2)(C).

Jimmy Antonio Bonilla, CMFSP–California Medical Facility State Prison (Solano), Vacaville, CA, pro se.

Arthur Dudley, Esq., Page Salsbury & Dudley, Santa Cruz, CA, Stan M. Helfman, Esq., Jeffrey M. Laurence, Esq., AGCA–Office of the California Attorney General (SF), San Francisco, CA, for Respondent–Appellee.

Before GOODWIN, TASHIMA, and CLIFTON, Circuit Judges.

## MEMORANDUM **

Jimmy Antonio Bonilla, a California state prisoner, appeals the judgment of the district court denying his petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Bonilla contends that his right to equal protection was violated by the prosecutor's use of peremptory challenges, pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and the California analogue, *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978).[1] We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm.

## STANDARD OF REVIEW

■ The district court's denial of a § 2254 petition is subject to de novo review. *Lewis v. Lewis*, 321 F.3d 824, 829 (9th Cir.2003). We may reverse a state court decision only if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Although we "would normally be required to defer to the court of appeal's factual finding that there was no prima facie showing of bias," de novo review applies to a *Batson* claim where the state court of appeal "employed the incorrect legal standard" in determining whether the defendant had established a prima facie case. *Paulino v. Castro*, 371 F.3d 1083, 1090 (9th Cir.2004). The application of de novo review is based on our holding that the California *Wheeler* standard for establishing a prima facie case is more stringent than the *Batson* standard because it requires a defendant to show a strong likelihood, rather than a reasonable inference,

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. This case was removed from the originally-scheduled argument calendar pending the Supreme Court's decision in *People v. Johnson*, 30 Cal.4th 1302, 1 Cal.Rptr.3d 1, 71 P.3d 270, *cert. granted*, 540 U.S. 1045, 124 S.Ct. 817,

157 L.Ed.2d 692 (2003), in which the California Supreme Court addressed the relationship between *Batson* and *Wheeler*. The Supreme Court, however, subsequently dismissed *Johnson* on the basis that it lacked jurisdiction because the California Supreme Court's decision was not a final decision. *Johnson v. Cal.*, 541 U.S. 428, ——–——, 124 S.Ct. 1833, 1835–36, 158 L.Ed.2d 696 (2004).

that the jurors were being stricken on the basis of race. *Id.; Wade v. Terhune,* 202 F.3d 1190, 1197 (9th Cir.2000). The California Supreme Court concluded in *People v. Johnson,* 30 Cal.4th 1302, 1 Cal.Rptr.3d 1, 71 P.3d 270 (2003), that the *Wheeler* standard is and always has been the same as the reasonable inference standard found in *Batson. Id.* at 277.

Nonetheless, in *Cooperwood v. Cambra,* 245 F.3d 1042 (9th Cir.2001), we held that de novo review applied because, between the California state courts' decisions in *People v. Bernard,* 27 Cal.App.4th 458, 32 Cal.Rptr.2d 486 (1994), and *People v. Box,* 23 Cal.4th 1153, 99 Cal.Rptr.2d 69, 5 P.3d 130 (2000), California state courts were applying the *Wheeler* "strong likelihood" standard in a more stringent manner than the *Batson* "reasonable inference" standard and thus applying a lower standard of scrutiny to peremptory strikes than permitted under the federal Constitution. *Cooperwood,* 245 F.3d at 1046–47. Bonilla was convicted in 1996, and the California Court of Appeal affirmed his conviction in 1998. De novo review therefore applies to the question of whether Bonilla has established a prima facie *Batson* case, despite the California Supreme Court's decision in *Johnson.*

### DISCUSSION

█ We decline Bonilla's invitation to reach the ultimate question of whether there was intentional discrimination.[2] Bonilla's reliance on *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), is misplaced because *Hernandez* was a direct appeal, while Bonilla's case is before us on habeas review. Where, as here, the California Supreme Court summarily denies a petition for review, we review the "last reasoned decision," which, in this case, is the state appellate court's decision. *Lewis,* 321 F.3d at 829. The California Court of Appeal focused entirely on whether Bonilla had established a prima facie case and concluded that it agreed with the trial court that Bonilla had failed to do so. We therefore address only whether Bonilla has made a prima facie showing of purposeful discrimination.[3]

In order to establish a prima facie case, Bonilla must show that (1) he is a member of a cognizable racial group; (2) the prosecution has removed members of such a group;[4] and (3) the circumstances raise an inference that the challenges were motivated by race. *Batson,* 476 U.S. at 96, 106 S.Ct. 1712; *Fernandez v. Roe,* 286 F.3d 1073, 1077 (9th Cir.), *cert. denied,* 537 U.S. 1000, 123 S.Ct. 514, 154 L.Ed.2d 395 (2002). Although a pattern of strikes against a cognizable group may support an inference of discrimination, a court must consider all the relevant circumstances

---

**2.** Because the parties are familiar with the facts and procedural history of this case, we do not recite them here, except as necessary to aid in understanding this disposition.

**3.** The prima facie showing is the first step of *Batson'* s "three-step process for evaluating a claim that a prosecutor has exercised peremptory challenges in a racially-discriminatory manner." *Paulino,* 371 F.3d at 1089. First, the trial court must determine whether the defendant has made a prima facie showing of purposeful discrimination " 'by showing that the totality of the relevant facts gives rise to

an inference of discriminatory purpose.' " *Id.* (quoting *Batson,* 476 U.S. at 94, 106 S.Ct. 1712). If the defendant establishes a prima facie case, the burden shifts to the state to articulate a race-neutral explanation for the peremptory challenge. *Id.* Then, the trial court must determine whether the defendant has established purposeful discrimination. *Id.*

**4.** "The defendant and the stricken jurors need not be members of the same racial group." *Paulino,* 371 F.3d at 1090 n. 6.

surrounding a peremptory challenge. *Tolbert v. Gomez*, 190 F.3d 985, 988 (9th Cir.1999).

Unfortunately for Bonilla, he has not alleged any facts regarding jury selection, other than the number of Hispanic women struck. Nor has he submitted any statistical evidence regarding, for example, the "proportion of available minorities stricken and the relative rate of such strikes," *Fernandez*, 286 F.3d at 1078, or the "percentage of peremptories" exercised against Hispanics, *Paulino*, 371 F.3d at 1091. *Cf. id.* (stating that the prosecutor used "five out of six, or over 83 percent, of its peremptory challenges to strike blacks"); *Fernandez*, 286 F.3d at 1078 (describing evidence which showed that, "[w]hile Hispanics constituted only about 12% of the venire, 21% ... of the prospective juror challenges were made against Hispanics"). Thus, Bonilla has failed to allege any facts that show a "statistical pattern" sufficient to support a prima facie case. *Paulino*, 371 F.3d at 1091. Bonilla also argues that all four of the jurors in question were excused by the prosecutor at the earliest point in time, but he fails to explain the significance of this fact.

We disagree with Bonilla's contention that the reasons articulated by the prosecutor for excusing the challenged jurors were inadequate. For example, the prosecutor's concern with Juror 68's career as a substance abuse counselor, in addition to her admission that she is sympathetic to anyone in trouble, and his concern that he may have alienated her somehow are "entirely plausible reasons, independent of race, why a prosecutor would not have wanted her as a juror." *Wade*, 202 F.3d at 1198. Furthermore, although the prosecutor mistakenly stated that it was Juror 8A

herself, rather than her father, who had been unjustly arrested, Juror 8A acknowledged that the incident still bothered her, and the prosecutor expressed his concern that he would have "a leg down" with her because of it. Bonilla does not explain whether there were other potential jurors of another race who were also counselors, or who had had negative experiences with law enforcement, and yet were allowed to remain on the jury. *See Turner v. Marshall*, 121 F.3d 1248, 1251–52 (9th Cir. 1997) (stating that "[a] comparative analysis of jurors struck and those remaining is a well-established tool for exploring the possibility that facially race-neutral reasons are a pretext for discrimination" because "[p]eremptory challenges 'cannot be lawfully exercised against potential jurors of one race unless potential jurors of another race with comparable characteristics are also challenged'") (quoting *Doss v. Frontenac*, 14 F.3d 1313, 1316–17 (8th Cir. 1994)).

Finally, although the Supreme Court has acknowledged that "gender can be used as a pretext for racial discrimination," Bonilla still "must make a prima facie showing of intentional discrimination." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 144, 145, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). Examining all the relevant circumstances surrounding the peremptory challenges, we conclude that he has failed to make such a showing.[5]

For the foregoing reasons, the judgment of the district court denying the petition for a writ of habeas corpus is

AFFIRMED.

---

**5.** Even if we were to reach the ultimate question of intentional discrimination, "the critical question in determining whether a prisoner has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike." *Miller–El v. Cockrell*, 537 U.S. 322, 338–39, 123 S.Ct. 1029, 154 L.Ed.2d 931

(2003). The prosecutor's justifications for his peremptory strikes in the instant case are persuasive.