LAGESEN, P. J.
*9 *379 Faced with criminal charges, defendant, who is black, opted to exercise his state and federal constitutional rights to a jury trial. Among those summoned as potential jurors for defendant's case were three college students home for the summer. Each was passed for cause-that is, determined to be capable of deciding this case fairly and impartially in accordance with the law. Robert and Sarah, who are white, were empaneled as jurors. Fitsum, who is black-and the sole African-American in the jury pool that day-was not empaneled after the prosecutor exercised a peremptory strike against him and the trial court overruled defendant's objection under Batson v. Kentucky , 476 U.S. 79, 85, 106 S. Ct. 1712, 90 L.Ed. 2d 69 (1986). The question before U.S. is whether, under the "comparative juror" analysis adopted by the Supreme Court in Miller-El v. Dretke , 545 U.S. 231, 241, 125 S. Ct. 2317, 162 L.Ed. 2d 196 (2005), and applied in Snyder v. Louisiana , 552 U.S. 472, 128 S. Ct. 1203, 170 L.Ed. 2d 175 (2008), and Flowers v. Mississippi , --- U.S. ----, 139 S.Ct. 2228, 204 L.Ed. 2d 638 (2019), the court erred in overruling defendant's Batson objection. Although Snyder and Miller-El have both been on the books for more than a decade, this case appears to present the first opportunity for our court to consider a trial court's ruling on a Batson challenge under the comparative juror analysis.[1] We conclude that, under that analysis, the trial court erred when it overruled defendant's Batson objection and, further, *380 that the error is one that requires reversal. We therefore reverse and remand.[2]
I. BACKGROUND
A. Applicable Law
The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deny to any person within its jurisdiction the equal protection of the laws." That clause affords a litigant the right not to have potential jurors of the same race excluded from the jury on account of race. Batson, 476 U.S. at 85, 106 S.Ct. 1712. It also affords a litigant the right not to have potential jurors of the same gender excluded from the jury on account of gender. J.E.B. v. Alabama , 511 U.S. 127, 114 S. Ct. 1419, 128 L.Ed. 2d 89 (1994).
In the context of a jury trial, the Equal Protection Clause does not protect the rights of litigants alone. It also protects the rights of each citizen who makes the sacrifice of time and often money demanded by a summons for jury duty. Every potential juror who shows up at the courthouse for jury service has "the right not to be excluded from [a jury] on account of race." Powers v. Ohio , 499 U.S. 400, 111 S. Ct. 1364, 113 L.Ed. 2d 411 (1991). And every potential juror has the right not to be excluded from a jury on *10 account of gender. J.E.B. , 511 U.S. at 145-46, 114 S.Ct. 1419.
The recognition and respect of those rights by lawyers acting on behalf of the state is critical to the just and fair functioning of our judicial system.[3] As the Supreme Court has told us:
*381 "Discrimination in jury selection, whether based on race or on gender, causes harm to the litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process. The litigants are harmed by the risk that the prejudice that motivated the discriminatory selection of the jury will infect the entire proceedings. The community is harmed by the State's participation in the perpetuation of invidious group stereotypes and the inevitable loss of confidence in our judicial system that state-sanctioned discrimination in the courtroom engenders."
Id . at 140, 114 S.Ct. 1419 (internal citation omitted). Thus, starting in 1879 with Strauder v. West Virginia , 100 U.S. 303, 25 L.Ed. 664 (1879), the Court has attempted to eradicate racial discrimination in the selection of jurors and, more recently, has taken steps toward eliminating gender discrimination in that process. However, safeguarding against the unconstitutional discriminatory exclusion of jurors has not been easy: "The rub has been the practical difficulty of ferreting out discrimination in selections discretionary by nature, and choices subject to myriad legitimate influences, whatever the race of the individuals on the panel from which jurors are selected." Miller-El , 545 U.S. at 238, 125 S.Ct. 2317. As a result, over time, the Court has intensified the scrutiny given to a prosecutor's exercise of a peremptory strike alleged to be impermissibly discriminatory. See id . at 238-40, 125 S. Ct. 2317 (discussing evolution of Supreme Court precedent).
The Court's decision in Batson established the three-step process by which a litigant may challenge the exercise of a peremptory strike of a juror as impermissibly race- (or, after J.E.B. , gender-) based. To bring a Batson challenge, a litigant must make a prima facie showing that a peremptory strike was based on race or gender. The standard for making a prima facie showing is not high. A litigant does so "by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." Johnson v. California , 545 U.S. 162, 170, 125 S. Ct. 2410, 162 L.Ed. 2d 129 (2005) (rejecting claim that prima facie Batson showing required demonstration that it was *382 more likely than not that discrimination occurred). One way a criminal defendant may make a prima facie case is by demonstrating that "the totality of the relevant facts about a prosecutor's conduct during the defendant's own trial" allows for an inference of discrimination. Miller-El , 545 U.S. at 239, 125 S.Ct. 2317 (internal quotation marks omitted). " 'Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging * * * jurors' within an arguably targeted class." Id . (quoting Batson , 476 U.S. at 97, 106 S.Ct. 1712 ). If the state does so, then the trial court must, after consulting "all of the circumstances that bear on racial animosity," determine whether the defendant has shown purposeful discrimination by the state. Snyder , 552 U.S. at 478, 128 S.Ct. 1203.
Although the adoption of the Batson framework made it easier for a criminal defendant to challenge a prosecutor's exercise of a peremptory strike than it had been under the Court's prior case law, the framework "came with a weakness of its own owing to its very emphasis on the particular reasons a prosecutor might give." Miller-El , 545 U.S. at 239-40, 125 S.Ct. 2317. That is because some race (or gender) neutral reasons *11 supplied by prosecutors are false or pretextual:
"If any facially neutral reason sufficed to answer a Batson challenge, then Batson would not amount to much more than [the prior precedent]. Some stated reasons are false, and although some false reasons are shown up within the four corners of a given case, sometimes a court may not be sure unless it looks beyond the case at hand."
Id . at 240, 125 S.Ct. 2317. Thus, as the Court emphasized in Miller-El , a court reviewing a Batson challenge must consult " 'all relevant circumstances.' " Id. (quoting Batson , 476 U.S. at 96-97, 106 S.Ct. 1712 ). As we read the Court's decisions, the assessment of "all relevant circumstances" includes, among other things, conducting a comparative juror analysis-at least when the record is adequate to do so-to determine whether a prosecutor's proffered race neutral reason for excluding a minority juror "applies just as well to an otherwise-similar [nonminority] who is permitted to serve." Id . at 241, 125 S. Ct. 2317. If it does, "that is evidence tending to prove purposeful discrimination to be considered at Batson 's third step."
*383 Id .[4] ; Flowers , --- U.S. at ----, 139 S. Ct. at 2248 ("Comparing prospective jurors who were struck and not struck can be an important step in determining whether a Batson violation occurred.").
Under Powers , a criminal defendant has standing to raise a Batson challenge not only to protect his own Fourteenth Amendment rights but also to protect the Fourteenth Amendment rights of potential jurors. 499 U.S. at 415, 111 S.Ct. 1364. That is largely because "[t]he discriminatory use of peremptory challenges by the prosecution causes a criminal defendant cognizable injury, and the defendant has a concrete interest in challenging the practice," and because wrongfully excluded jurors have no other easy way to vindicate their own rights. Id . at 411-15, 111 S.Ct. 1364.
Snyder illustrates the comparative juror analysis and how that analysis can reveal purposeful discrimination by a prosecutor in the exercise of a peremptory strike. There, the Court applied a comparative juror analysis (although the trial court had not done so) to determine that the prosecutor's exercise of a peremptory strike against a black juror was discriminatory and that the trial court, therefore, erred by overruling the defendant's Batson objection. At issue was the prosecutor's peremptory strike of Brooks, who was a college senior attempting to complete student-teaching obligations. In response to the defendant's Batson objection, the prosecutor offered two race neutral reasons for the strike: (1) that Brooks "looked very nervous * * * throughout the questioning"; and (2) that, because Brooks was a student teacher, "he might, to go home quickly, come back with guilty of a lesser verdict so there wouldn't be a penalty phase." Snyder , 552 U.S. at 478, 128 S.Ct. 1203. The trial court summarily rejected the defendant's Batson challenge and allowed the peremptory strike. Id. at 479, 128 S. Ct. 1203. The Louisiana Supreme Court affirmed the trial court's rejection of the defendant's Batson challenge.
*384 The Supreme Court determined that the Louisiana courts had erred. It first concluded that the trial court's ruling could not be sustained on the ground that the prosecutor's peremptory strike had been based on Brooks's demeanor because "the record [did] not show that the trial judge actually made a determination concerning Mr. Brooks' demeanor." Id. Absent a "specific finding on the record concerning Mr. Brooks' demeanor," the Court could not "presume that the trial judge credited the prosecutor's assertion that Mr. Brooks was nervous," and, thus, could not sustain the trial court's rejection of the defendant's Batson challenge based on demeanor findings.[5] Id .
*12 As to the prosecutor's second articulated reason for striking Brooks, the Court determined that it was implausible and pretextual, when considered against the record as a whole. The Court first observed that the prosecutor's expressed fear that Brooks, to avoid a potential conflict with his student-teaching obligations, would be inclined to return a verdict on a lesser-included offense to eliminate the need for a penalty phase, was "highly speculative," because the defendant's trial was expected to be short, and because Brooks's school had informed the court that it did not think Brooks's jury service on a trial that length would interfere with Brooks's school obligations. Id . at 482-83, 128 S. Ct. 1203.
The Court then conducted a comparative juror analysis, determining that "[t]he implausibility of [the prosecutor's second] explanation [was] reinforced by the prosecutor's acceptance of white jurors who disclosed conflicting obligations that appear to have been at least as serious as Mr. Brooks'." Id . at 483, 128 S. Ct. 1203. The Court noted that one white juror who the prosecutor did not strike, Laws, had expressed concerns about family and work obligations that "seem[ed] substantially more pressing than Mr. Brooks' [concerns]." Id . at 483-84, 128 S. Ct. 1203. That, to the Court, suggested that the prosecutor's explanation as to Brooks was pretextual: "If the prosecution *385 had been sincerely concerned that Mr. Brooks would favor a lesser verdict than first-degree murder in order to shorten the trial, it is hard to see why the prosecution would not have had at least as much concern regarding Mr. Laws." Id . at 484, 128 S. Ct. 1203. So did the fact that the prosecutor did not exercise a peremptory strike against another white juror who also had expressed concerns about how the trial would interfere with his work obligations. Id. at 484, 128 S. Ct. 1203. Thus, the Court concluded, "[t]he prosecution's proffer of this pretextual explanation naturally gives rise to an inference of discriminatory intent." Id. at 485, 128 S. Ct. 1203. Accordingly, the Court held that "the trial court committed clear error in its ruling on a Batson objection" and reversed. Id . at 474, 128 S. Ct. 1203.
B. Factual Background
Defendant was charged with seven counts of using a child in a display of sexually explicit conduct, in violation of ORS 163.670. Defendant opted to exercise his right to a jury trial. Robert, Sarah, and Fitsum, who, as noted, were all college students at the time, were summoned to serve in the jury pool for defendant's case. As did the other potential jurors, each filled out a jury questionnaire. Robert indicated that he was 19 years old and had been a resident of Washington County for 10 years. He identified his "occupation and employer" as "student" and his "specialized training, experience, or education" as "college student." Sarah stated that she was 21 years old and had been a resident of Washington County for 15 years. Like Robert, she identified her "occupation and employer" as "student." As "specialized training, experience, or education," Sarah said "Bachelor's." Fitsum represented that he was 20 years old and a resident of Washington County for 11 years. Responding to the request for "occupation and employer," Fitsum did not equate his student status with employment and responded "unemployed." As for "specialized training, experience, or education," he explained that he was a high school graduate and in his third year of college.
Robert and Sarah are white. Fitsum is black and was the only black person in the jury pool that day. All three were passed for cause by both the state and defendant. During voir dire , the prosecutor asked no questions of *386 Robert and Sarah, but included Fitsum among those jurors he singled out for questioning. When it came time to exercise peremptory challenges, neither the prosecutor nor defendant challenged Robert and Sarah and they were empaneled on the jury. *13 Based on his place in the order and the parties' previous peremptory challenges, Fitsum was called up to serve as the fourteenth and final juror (that juror would be the second alternate, something the parties knew but the jurors did not). The prosecutor exercised a peremptory challenge against him. Defendant objected to that peremptory challenge under Batson . He argued that it was inferable that the prosecutor was excluding the one black juror based on race, given that defendant was African-American and the victim of the charges was white.
The prosecutor responded that it was "impossible" that his challenge was based on race because his notes on the jury questionnaires reflected that he had made the decision to strike Fitsum before he had seen him: "But I wrote Fitsum * * * unemployed, college student, 20 years old, young, and then on the 1 to 10 scale, I ranked him as a 0. Meaning I don't like unemployed, young college students on my juries." The prosecutor acknowledged that he had not challenged Robert or Sarah and said that he had decided he "liked" Robert because Robert was a boy scout, a fact that defense counsel had elicited during his voir dire . As for Sarah, the prosecutor offered no explanation as to why he did not challenge her. He remarked simply that she was "young," and then reiterated that Fitsum, "being unemployed and young, I decided I didn't like him and was going to bump him even before I saw him."
As proof, the prosecutor offered into evidence a post-it note on which he had noted that he had ranked Fitsum a "0" because of his status as an unemployed, young college student. The prosecutor did not offer into evidence notes on Robert or Sarah, or other evidence that, based on their questionnaires, he had scored them as zeros as well because of their identical statuses as young, unemployed college students.
In response, defendant urged the trial court to conclude that the prosecutor's justification, when viewed in the *387 context of the record, was an "excuse." In particular, argued defendant, the inclusion of the "other young people on the jury" meant that the prosecutor's explanation could not be credited, and that the court should infer that the challenge "is precisely focused on excluding the only African American on the venire."
At that point, the prosecutor accused defense counsel of being a racist for pressing his case on the Batson challenge and called his arguments "offensive." Making those points at some length, he asserted:
"[Defense Counsel] does more than simply making a record, which I understand defense attorneys from time to time need to do. [Defense counsel] is a racist man, and he's racist because he is saying that a juror belongs on this jury simply because of his race.
"And any time any one of U.S. judges any person by virtue of their race and their race alone, as [defense counsel] is doing-and is accusing me of being racist-any time that happens, whether it's for an ultimate proper or improper motive, the fact that he's judging someone on the race and saying that this juror deserves to be here simply because he's African American is offensive.
"And this Court shouldn't sanction that offensive argument by sustaining his objection. I think I've provided more than enough basis. I'm-I know attorneys aren't supposed to be offended, but I am offended.
"After providing what I think is indisputable evidence that I made the decision to bump him prior to even seeing him, I'm offended that [defense counsel] says that it was still, nonetheless, racist on my part. I think it goes beyond what needed to be done here today and goes beyond what's appropriate."
The trial court overruled the Batson challenge and allowed the prosecutor's peremptory challenge of Fitsum. The court indicated that it was not certain that defendant had established a sufficient prima facie case under Batson , but concluded, ultimately, that the prosecutor "has put forth reasons that he noted of why this particular juror would be challenged before seeing the juror in court. And that's enough."
*388 The case proceeded to trial. Defendant was convicted on all counts and appealed. He contends that the trial court erred when it *14 credited the prosecutor's explanation for why he excluded Fitsum and did not, instead, find that it was a pretext. The state responds that the record is adequate to support the trial court's determination that the prosecutor's exercise of a peremptory strike against Fitsum was not unconstitutionally discriminatory.
II. ANALYSIS
Before turning to the analysis of the correctness of the trial court's ruling on defendant's Batson challenge, we make two observations pertaining to how the proceedings surrounding defendant's Batson challenge unfolded below.
Our first observation is that the prosecutor's response to defendant's Batson challenge risked undermining the effectiveness of that framework in eradicating constitutionally impermissible discrimination in jury selection. Defendant's Batson challenge called upon the prosecutor to supply a race-neutral reason for his exercise of a peremptory challenge against Fitsum, and then to stand or fall on that reason, as difficult as that might have been in the moment:
"As for law, the rule in Batson provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it. It is true that peremptories are often the subjects of instinct, and it can sometimes be hard to say what the reason is. But when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives."
Miller-El , 545 U.S. at 252, 125 S.Ct. 2317 (internal citations omitted).
Here, though, the prosecutor did not simply offer up his reasons "as best he [could] and stand or fall on the plausibility of" those reasons; he also responded by characterizing defendant's Batson challenge as "offensive," accusing defense counsel of calling him a "racist," and then calling defense counsel a "racist" himself for arguing that the prosecutor's stated reasons did not survive the scrutiny required under Batson . If Batson is to realize its promise *389 of eliminating impermissible discrimination in jury selection, we cannot afford to allow Batson challenges to devolve into what happened here. There is nothing offensive or racist about invoking the United States Supreme Court-established process for eliminating unconstitutional discrimination in jury selection, and defense counsel should not have been subjected to those accusations by the prosecutor simply for doing his job in accordance with the law.
Our second observation, in light of the difficulties that can be involved in litigating a Batson challenge, is that there are steps that we Oregonians can take to help ensure that jury selection is free from discrimination, implicit or explicit. Our state laws concerning peremptory challenges based on race, ethnicity, or sex provide little guidance as to when a prima facie case of prohibited discrimination has been rebutted. See ORCP 57 D(4) (setting forth a burden-shifting process for peremptory challenges); ORS 136.230 (providing that peremptory challenges in criminal cases are subject to ORCP 57 D(4)). Our neighbor, Washington, has been at the forefront of jurisdictions addressing that question, and last year adopted a concrete set of rules for handling Batson challenges, which are attached as an appendix. Washington's experience, and whether a similarly concrete set of rules would improve our handling of peremptory challenges, are questions that may be appropriate for the Council on Court Procedures and the legislature to consider.
As for the issue at hand, the parties generally agree that it hinges on whether the trial court's determination, at the third stage of the Batson analysis, that the prosecutor's peremptory strike of Fitsum was not the product of purposeful discrimination, is one that can be sustained on this record. That determination, which is one of fact, is one that we review for clear error. State v. Ruiz-Martinez , 173 Or. App. 202, 207, 21 P.3d 147, rev. den. , 332 Or. 240, 28 P.3d 1175 (2001) ; see also Snyder , 552 U.S. at 477, 128 S.Ct. 1203 (assessing whether trial court's rejection of Batson challenge was "clearly erroneous").
*15 When the trial court's ruling is considered through the lens of the comparative juror analysis employed in Snyder and Miller-El , it is clearly erroneous. On this record, it is implausible to think that the prosecutor's articulated *390 reason for exercising the peremptory strike against Fitsum is anything other than pretextual. That is because the prosecutor's stated reason-that Fitsum was a young, unemployed college student-applies with equal force to Robert and Sarah, the two white, young unemployed college students whom the prosecutor did not challenge. Much as was the case in Snyder , if the prosecutor sincerely believed that Fitsum's status as a young, unemployed college student is what made him unsuitable as a juror, it is difficult to see why he expressed no concern, at any point, that Robert and Sarah were also not suitable jurors because of their statuses as young, unemployed college students. In view of the prosecutor's disparate treatment of similarly situated white jurors, as was the case in Snyder , the only reasonable conclusion is that the prosecutor's stated reasons were pretextual, "naturally giv[ing] rise to an inference of discriminatory intent." Snyder , 552 U.S. at 485, 128 S.Ct. 1203 ; see also Miller-El , 545 U.S. at 241, 125 S.Ct. 2317 ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson 's third step.").[6]
The state contends that several aspects of the record undercut the inference of pretext, so as to support the trial court's determination. On consideration of "all relevant circumstances," as Miller-El requires, we are unable to agree.
The state first points to the fact that the prosecutor said that he made up his mind to strike Fitsum before ever seeing him or learning his race, and that he had a post-it note showing that he had ranked Fitsum "0" on a "1 to 10" scale before seeing him because his questionnaire indicated that he was an unemployed, young college student. But, if the prosecutor's premeeting assessment of Fitsum was truly divorced from race, we would expect that the prosecutor would have had similar post-it notes ranking *391 Robert and Sarah each as "0" as well, given their identical statuses as young, unemployed college students. While the court explored, on the record, the prosecutor's differential treatment of Robert, Sarah, and Fitsum, the prosecutor offered no explanation as to why he had not treated them similarly pretrial. In the absence of evidence that the prosecutor ranked Robert and Sarah similarly based on their questionnaires, the prosecutor's pretrial ranking of Fitsum does not defeat the inference of pretext that follows from his differential treatment of Robert and Sarah after seeing all the jurors. Moreover, as the Ninth Circuit has recognized, a prosecutor's claim to have determined to strike a juror before seeing the juror "may be questioned" when, as is the case here, the name of the juror was on a jury questionnaire and was indicative of race. Fernandez v. Roe , 286 F.3d 1073, 1079 (9th Cir. 2002).
The state also points to the fact that the prosecutor explained that he did not exercise a peremptory against Robert because he liked the fact that Robert was a boy scout. If the prosecutor had attempted to elicit from Fitsum whether he shared that characteristic, that fact might suffice to show that the prosecutor had a nonpretextual reason for using a peremptory against Fitsum, but not against Robert. In other words, if the prosecutor viewed boy scout status as the sort of thing that would cause him to bend his strongly articulated presumptive position against having young, unemployed college students on juries,[7] we would expect him to explore that topic with all prospective jurors *16 who were young, unemployed college students, regardless of race. But he did not do so.
Finally, although the prosecutor did not articulate a reason for his differential treatment of Sarah and Fitsum, the state points to the fact that Sarah was a woman as an additional indication that the prosecutor's exercise of a peremptory against Fitsum was not based on race. The state argues: "Although the prosecutor did not state so expressly, a prosecutor might reasonably refrain from challenging *392 a female juror, when trying a case involving a young girl who was preyed-upon by an older man." This argument creates problems for the state and, given those, the state wisely backed away from it at oral argument. Nonetheless, it is difficult to disagree with the underlying premise of the state's argument: that, on this record, it is inferable that the prosecutor's exercise of the peremptory against Fitsum was unconstitutionally based on gender, as well as race. That would make it unconstitutional under both J.E.B. and Batson .
In view of the prosecutor's differential treatment of other young, unemployed college students, the prosecutor's articulated race neutral reason for excluding Fitsum-that he was a young, unemployed college student-does not hold up, and it is not reasonable to view that articulated reason as anything other than a pretext for race, and possibly gender, discrimination. Although the prosecutor may have had a legitimate nondiscriminatory reason for doing what he did, under Miller-El , a prosecutor must "stand or fall on the plausibility of the reasons he gives." Miller-El , 545 U.S. at 252, 125 S.Ct. 2317. In this case, on this record, the prosecutor's stated reasons are not plausible. For that reason, the trial court's rejection of defendant's Batson challenge constitutes clear error.
That error requires reversal, and the state does not argue otherwise. As the state acknowledges, the federal courts that have considered the question generally have concluded that a Batson error is structural error, requiring automatic reversal without an assessment of harmless error. See, e.g. , United States v. Mahbub , 818 F.3d 213, 223 (6th Cir. 2016) ; Crittenden v. Chappell , 804 F.3d 998, 1003 (9th Cir. 2015) ; United States v. Harris , 192 F.3d 580, 587-88 (6th Cir. 1999). That flows from the Supreme Court's recognition that racial discrimination in jury selection undermines the integrity of the judicial process in a fundamental way. See Flowers , --- U.S. at ----, 139 S. Ct. at 2242 ("By taking steps to eradicate racial discrimination from the jury selection process, Batson sought to protect the rights of defendants and jurors, and to enhance public confidence in the fairness of the criminal justice system."). As *393 the Court emphasized in Powers when it held that a criminal defendant has third-party standing to challenge the discriminatory exclusion of a juror of the same race in order to vindicate that juror's equal protection rights, discrimination in jury selection fundamentally damages the judicial process:
"The discriminatory use of peremptory challenges by the prosecution causes a criminal defendant cognizable injury[.] *** This is not because the individual jurors dismissed by the prosecution may have been predisposed to favor the defendant; if that were true, the jurors might have been excused for cause. Rather, it is because racial discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process,' and places the fairness of a criminal proceeding in doubt.
"The jury acts as a vital check against the wrongful exercise of power by the State and its prosecutors. The intrusion of racial discrimination into the jury selection process damages both the fact and the perception of this guarantee. 'Jury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial or political prejudice ***.' Active discrimination by a prosecutor during this process condones violations of the United States Constitution within the very institution entrusted with its enforcement, and so invites cynicism respecting the jury's neutrality and its obligation to adhere to the law.
"*** A prosecutor's wrongful exclusion of a juror by a race-based peremptory challenge is a constitutional violation committed in open court at the outset of the *17 proceedings. The overt wrong, often apparent to the entire jury panel, casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial of the cause. The voir dire phase of the trial represents the 'jurors' first introduction to the substantive factual and legal issues in a case.' The influence of the voir dire process may persist through the whole course of the trial proceedings."
Powers , 499 U.S. at 411-12, 111 S.Ct. 1364 (internal citations omitted); see also United States v. Harris , 192 F.3d 580, 588 (6th Cir. 1999) ("Because the process of jury selection-even the selection of alternate jurors-is one that affects the entire conduct *394 of the trial, the district court's decision with respect to the peremptory challenges of the alternate jurors is not subject to harmless error review.").
Reversed and remanded.
*395 APPENDIX
Washington General Rule 37, Jury Selection [Adopted Effective April 24, 2018]
(a) Policy and Purpose. The purpose of this rule is to eliminate the unfair exclusion of potential jurors based on race or ethnicity.
(b) Scope. This rule applies in all jury trials.
(c) Objection. A party may object to the use of a peremptory challenge to raise the issue of improper bias. The court may also raise this objection on its own. The objection shall be made by simple citation to this rule, and any further discussion shall be conducted outside the presence of the panel. The objection must be made before the potential juror is excused, unless new information is discovered.
(d) Response. Upon objection to the exercise of a peremptory challenge pursuant to this rule, the party exercising the peremptory challenge shall articulate the reasons the peremptory challenge has been exercised.
(e) Determination. The court shall then evaluate the reasons given to justify the peremptory challenge in light of the totality of circumstances. If the court determines that an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge, then the peremptory challenge shall be denied. The court need not find purposeful discrimination to deny the peremptory challenge. The court should explain its ruling on the record.
(f) Nature of Observer. For purposes of this rule, an objective observer is aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in Washington State.
(g) Circumstances Considered. In making its determination, the circumstances the court should consider include, but are not limited to, the following:
(i) the number and types of questions posed to the prospective juror, which may include consideration of whether the party exercising the peremptory challenge *396 failed to question the prospective juror about the alleged concern or the types of questions asked about it;
(ii) whether the party exercising the peremptory challenge asked significantly more questions or different questions of the potential juror against whom the peremptory challenge was used in contrast to other jurors;
(iii) whether other prospective jurors provided similar answers but were not the subject of a peremptory challenge by that party;
(iv) whether a reason might be disproportionately associated with a race or ethnicity; and
(v) whether the party has used peremptory challenges disproportionately against a given race or ethnicity, in the present case or in past cases.
(h) Reasons Presumptively Invalid. Because historically the following reasons for peremptory challenges have been associated with improper discrimination in jury selection in Washington State, the following are presumptively invalid reasons for a peremptory challenge:
(i) having prior contact with law enforcement officers;
*18 (ii) expressing a distrust of law enforcement or a belief that law enforcement officers engage in racial profiling;
(iii) having a close relationship with people who have been stopped, arrested, or convicted of a crime;
(iv) living in a high-crime neighborhood;
(v) having a child outside of marriage;
(vi) receiving state benefits; and
(vii) not being a native English speaker.
(i) Reliance on Conduct. The following reasons for peremptory challenges also have historically been associated with improper discrimination in jury selection in Washington State: allegations that the prospective juror was sleeping, inattentive, or staring or failing to make eye *397 contact; exhibited a problematic attitude, body language, or demeanor; or provided unintelligent or confused answers. If any party intends to offer one of these reasons or a similar reason as the justification for a peremptory challenge, that party must provide reasonable notice to the court and the other parties so the behavior can be verified and addressed in a timely manner. A lack of corroboration by the judge or opposing counsel verifying the behavior shall invalidate the given reason for the peremptory challenge.
Washington State Court Rules, General Rule (GR) 37, Jury Selection, https://www.courts.wa.gov/court_rules/?fa=court_rules.display&group=ga&set=GR&ruleid=gagr37 (accessed June 25, 2019).

In State v. Turnidge , 359 Or. 364, 423-25, 374 P.3d 853 (2016), a capital case, our Supreme Court discussed the comparative juror analysis applied in Miller-El in the context of addressing the defendant's contention that the destruction of juror questionnaires impermissibly impaired his ability to obtain appellate review of his claim that the trial court improperly excused several jurors in violation of the rule announced in Witherspoon v. Illinois , 391 U.S. 510, 88 S. Ct. 1770, 20 L.Ed. 2d 776 (1968). Defendant urged the court to apply a comparative juror analysis in the Witherspoon context. The court rejected that argument, concluding that a Witherspoon challenge is not "inherently comparative" the way a Batson challenge is because "[a] Witherspoon challenge asks a different question than does a Batson challenge. * * * [It] asks whether an individual prospective juror's views about the death penalty will so hinder that juror's judgment that he or she will be unable to follow the oath" to decide the case impartially. Id. at 425, 374 P.3d 853 (emphasis in original). Apart from its discussion in Turnidge , our Supreme Court has not addressed or applied Miller-El 's comparative juror analysis and neither has our court.

We note that defendant has raised a number of other assignments of error. As to the assignments of error in the brief submitted by counsel, our resolution of the Batson question obviates the need to address them because they may not arise on remand. As to the assignments of error raised in the pro se supplemental brief, we reject them as unpreserved. That rejection on procedural grounds does not limit the trial court's discretion to consider such arguments on remand.

The Supreme Court later concluded that those equal protection rights also apply in purely private litigation. Edmonson v. Leesville Concrete Co., Inc. , 500 U.S. 614, 111 S. Ct. 2077, 114 L.Ed. 2d 660 (1991). Because this is a criminal case, we focus on the rights as they have been determined to exist in criminal cases or other cases prosecuted by the state. As the Court has acknowledged, discrimination in jury selection by a prosecutor is a particularly pernicious evil because of the way it undercuts public confidence in the criminal justice system, and in the reliability of the significant deprivations of life, liberty, and property by the state that can be imposed on individuals through the criminal justice system.

In Snyder , the trial court had not, at least in any clear way, conducted a comparative juror analysis, and the Supreme Court acknowledged "that a retrospective comparison of jurors based on a cold appellate record may be very misleading when alleged similarities were not raised at trial." 552 U.S. at 483, 128 S.Ct. 1203. The Court nonetheless concluded that, in that case, the record was adequate to allow for the analysis to be conducted on appeal, suggesting that, when the record allows for a comparative juror analysis, it should be conducted.

Although the Court did not say so explicitly, its rejection of the prosecutor's demeanor-based reason for excluding Brooks because there was no record that the trial court had made a demeanor-based finding suggests that, when a court rejects a Batson challenge based on demeanor evidence, it must make specific demeanor-based findings on the record, for those findings to be afforded any deference by a reviewing court.

Although it is possible that the prosecutor had a legitimate basis for exercising a peremptory challenge against Fitsum, as noted, the Supreme Court has been quite clear that the prosecutor must "stand and fall" on the reasons supplied, and that, "[i]f the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false." Miller-El , 545 U.S. at 252, 125 S.Ct. 2317.

To recall: "But I wrote Fitsum * * * unemployed, college student, 20 years old, young, and then on the 1 to 10 scale, I ranked him as a 0. Meaning I don't like unemployed, young college students on my juries ." (Emphasis added.)