Argued and submitted December 2, 2021, reversed and remanded July 13, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DARIAN LEE McWOODS,
*Defendant-Appellant.*

Multnomah County Circuit Court
16CR78185; A169710

514 P3d 1151

Defendant, a Black man, appeals from a judgment of conviction entered after a jury found him guilty of murder by abuse, first-degree criminal mistreatment, and witness tampering. Those summoned as potential trial jurors completed lengthy questionnaires (174 questions each) and were present for several hours of *voir dire*. Juror number 6 and juror number 9 were the only prospective jurors who were Black. After the prosecutor passed each of those two jurors for cause, he struck both of them by exercise of peremptory challenges. Defendant objected under *Batson v. Kentucky*, 476 US 79, 106 S Ct 1712, 90 L Ed 2d 69 (1986), arguing that the race-neutral reasons given by the prosecutor for those strikes were a pretext for race and that it was inferable that the strikes were the product of purposeful discrimination. *Held*: Considering all the relevant circumstances, including discrepancies in the prosecutor's characterization of answers given by jurors 6 and 9, as well as pretext identified by comparing the answers of jurors 6 and 9 with those of non-Black jurors who were not stricken, defendant met his burden to show purposeful discrimination. The race-neutral reasons given by the prosecutor were not plausible, and the trial court erred in overruling defendant's *Batson* objections and dismissing jurors 6 and 9. The court need not, and did not, reach defendant's assignments of error directed to the nonunanimous jury instruction and receipt of the nonunanimous verdict on the witness tampering count.

Reversed and remanded.

Christopher J. Marshall, Judge.

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

　　Before Mooney, Presiding Judge, and Pagán, Judge, and DeVore, Senior Judge.*

　　MOONEY, P. J.

　　Reversed and remanded.

_____

　　* Pagán, J., *vice* DeHoog, J. pro tempore.

**MOONEY, P. J.**

Defendant, a Black man, was charged with crimes related to the death of his 15-month-old daughter. Following a trial, the jury returned its verdict finding defendant guilty of murder by abuse, first-degree criminal mistreatment, and witness tampering. Defendant appeals from the resulting judgment of conviction. Relying on the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and a series of cases beginning with *Batson v. Kentucky*, 476 US 79, 106 S Ct 1712, 90 L Ed 2d 69 (1986), defendant assigns error to the trial court's decision to excuse the only two Black persons on the panel of prospective jurors, jurors number 6 and number 9, upon the state's use of two of its peremptory strikes against those jurors. Defendant also assigns error to the court's giving of a nonunanimous jury instruction and to the court's receipt of a nonunanimous verdict on the witness tampering count. We reject without discussion the state's argument that defendant did not adequately preserve his *Batson* challenges, and we conclude that the trial court committed reversible error when it excused juror number 6 and juror number 9, upon the state's peremptory strikes. Our conclusion on that assignment of error obviates the need for us to address the remaining two assignments.

We begin with the axiom, no longer subject to reasonable debate, that racial discrimination in the selection of jurors is harmful. Racial discrimination harms litigants because it carries with it the risk that "prejudice *** will infect the entire proceeding[.]" *J. E. B. v. Alabama*, 511 US 127, 140, 114 S Ct 1419, 128 L Ed 2d 89 (1994). Racial discrimination harms the individuals who are excluded from serving as jurors because it prevents them from participating in our justice system. *Id.* And racial discrimination harms the community "by the State's participation in the perpetuation of invidious group stereotypes and the inevitable loss of confidence" in the justice system that follows. *Id.*

American jurisprudence has developed slowly to combat racial discrimination in criminal proceedings, including jury (grand and petit) selection processes, and is based in large part on the constitutional right to an

"impartial jury"[1] and the requirement that every defendant be afforded "equal protection of the laws."[2] Under the Sixth Amendment, a person who has been charged with a serious offense has a fundamental right to trial by a jury that is drawn from "a fair cross-section of the community." *State v. Compton*, 333 Or 274, 288, 39 P3d 833 (2002). Defendant does not raise a "fair cross-section" challenge to the jury pool itself. He does, however, argue that he is entitled to a jury of his "peers." The federal constitution does not use the word "peers." The Oregon constitution likewise does not use the word "peers." Instead, both documents use the word "impartial" to describe the type of jury to which a criminal defendant is entitled. We do not understand defendant to argue that he was entitled to have his race represented on the trial jury. We understand his argument to instead focus on the state's use of peremptory strikes to exclude the only two Black persons from the jury panel after having already concluded that they were qualified to serve on the jury in this case and having, thus, passed those jurors for cause. Those challenges are examined using the framework established by *Batson*, as developed through subsequent case law.

As we have explained, "[t]o bring a *Batson* challenge," defendant must first "make a *prima facie* showing that a peremptory strike was based on race or gender." *State v. Curry*, 298 Or App 377, 381, 447 P3d 7 (2019), *adh'd to on recons*, 302 Or App 640, 461 P3d 1106 (2020). "'Once the defendant makes a *prima facie* showing, the burden shifts to the State to come forward with a neutral explanation for challenging *** jurors within an arguably targeted class.'"

---

[1] The Sixth Amendment to the United States Constitution provides, in relevant part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]"

Article I, section 11, of the Oregon Constitution similarly provides:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed[.]"

[2] The Fourteenth Amendment to the United States Constitution provides, in relevant part:

"No State shall *** deny to any person within its jurisdiction the equal protection of the laws."

*Id.* at 382 (quoting *Batson*, 476 US at 97). If the state offers such an explanation, "then the trial court must, after consulting 'all of the circumstances that bear on racial animosity,' determine whether the defendant has shown purposeful racial discrimination by the state." *Id.* (quoting *Snyder v. Louisiana*, 552 US 472, 478, 128 S Ct 1203, 170 L Ed 2nd 175 (2008). We are to assess *the plausibility* of the state's race-neutral explanation as we consider all the circumstances present and discern whether the defendant has shown purposeful discrimination. *Miller-El v. Dretke*, 545 US 231, 252, 125 S Ct 2317, 162 L Ed 2d 196 (2005) ("[W]hen illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. A *Batson* challenge does not call for a mere exercise in thinking up any rational basis.").

The state does not dispute that defendant made a *prima facie* showing that the peremptory challenges in question were race-based. And defendant does not dispute that the reasons given by the state for using those peremptory challenges are race-neutral. We are likewise satisfied that those first two showings under *Batson* were made. We, thus, turn our attention to the key issue, the third *Batson* step: whether the state's use of two of its peremptory strikes to remove the only two Black persons on the panel of prospective jurors was the product of purposeful racial discrimination. We review the trial court's ruling that a peremptory challenge was not the product of purposeful discrimination as a question of fact. *Curry*, 298 Or App at 389. A court reviewing a *Batson* challenge is to consider "all relevant circumstances," *id.* at 382, which may include a comparative juror analysis where the record allows for it, *State v. Vandyke*, 318 Or App 235, 238, 507 P3d 339 (2022).[3] We remain mindful

---

[3] The comparative juror analysis is a tool to identify pretext through circumstantial evidence of differential treatment. When a Black juror gives the same answers as a non-Black juror but is struck for those answers, then it gives rise to the inference of pretext because similarly situated persons have been treated differently. But it is important to remember that the analysis is just a tool and, even more importantly, that it does not stand for the proposition that striking a Black juror who answers questions differently from non-Black jurors necessarily is a race-neutral strike. Indeed, striking a Black juror for answers that differ from those of non-Black jurors could, itself, be evidence that the strike is based

that, at *Batson*'s third step, defendant bears the burden of persuasion. We are to affirm the trial court's ruling unless it is "clearly erroneous." *Snyder*, 552 US at 477.

We look to the record to determine whether the trial court's rejection of defendant's *Batson* challenges was clearly in error. *Vandyke*, 318 Or App at 238. We begin by noting that the usual process of jury selection pursuant to ORS 136.210 through 136.270 was followed. The prospective jurors completed written questionnaires containing 174 questions, and they participated in the oral process of *voir dire* that spanned a period of four to five hours in the courtroom. A number of prospective jurors were excused by the court, for cause—that is to say, for reasons ranging from inadequate qualifications to conflicts to bias. The state did not challenge juror number 6 or juror number 9 for cause and, in fact, affirmatively passed each for cause. Both jurors were, thus, seated in the jury box when the state's prosecutor used two of her available peremptory challenges to strike them from the jury as provided in ORS 136.230 and ORCP 57 D.

When the state exercised one of its available peremptory strikes on juror number 6, this dialogue took place:

"[PROSECUTOR]:   So Number 6, ***.

"THE COURT:   Okay.

"[DEFENSE COUNSEL]:   We would make a *Batson* objection to that, Your Honor.

"THE COURT:   Okay. Is there any further argument on that?

"* * * * *

"[DEFENSE COUNSEL]:   Just that he's entitled to a jury of his peers. We only have a total of two Black individuals, potentially, on this jury, and we believe that it would be a *Batson* violation to eliminate him.

"THE COURT:   And for the State?

---

on race. Here, defendant does not argue that any of the reasons given by the state were not race-neutral.

"[PROSECUTOR]: Judge, so there are numerous concerns that the State has regarding this individual's ability to be fair and impartial in this case. Referencing just his questionnaire, he indicated on the very last page that, 'Being a father with two daughters myself, I can't imagine what he's going through,' in reference to [defendant]. He didn't believe police officers to be honest. In fact, he agreed, rated it a two, that police officers often lie. He indicated agreement with the notion that he will be uncomfortable deciding guilt or innocence—or guilt or not guilt [*sic*]. He agreed that doctors often get it wrong. He indicated that he would be more likely to require evidence of motive, for needing to know all the facts or circumstances surrounding a murder before being able to make a determination. And he indicated agreement that DNA evidence is not reliable.

"Here in court, he indicated that he would need more information or more evidence given that this is a murder case rather than if this were some sort of other trial, which of course, the Court knows, is not the—does not comport with the burden of proof. There's no higher burden of proof in a murder case than in a theft case, for example. And, frankly, he—he showed up to jury service wearing a shirt that says I have issues. I don't know what that means, but that, in and of itself, is also concerning to the State.

"So, for all of those reasons, we believe that he would be bias[ed] to the State, and a *Batson* challenge—no showing has been made to support a *Batson* challenge.

"[DEFENSE COUNSEL]: I think that it mischaracterizes both what's in the questionnaire and what he testified—or what he said here. He indicated that he was beaten as a child. That's no longer socially acceptable. He indicated that he would have to know all of the facts, but that he would follow the standard of proof that was provided. He also indicated that it would be very difficult to presume my client innocent given that he's a father. So he indicated, very clearly, issues for both sides. And again, given all of the answers that he did give, I don't think that you can judge somebody.

"He wasn't brought back down for additional questioning by the Prosecution about these concerns. And they didn't make a for-cause challenge for him. My client is entitled to a jury of his peers, and we believe it is clearly—comes under *Batson*.

> "THE COURT:   Okay. All right. So, based on the entire record that we have here, the Court is going to allow the State's challenge. There's no *Batson* violation, then."

The trial court made no findings beyond those quoted above when it overruled defendant's *Batson* objection, accepted the state's peremptory challenge to juror number 6, and excused that juror from further service. But that lack of findings does not render review impossible. If it is clear from the "entire record" that the trial court's rejection of defendant's *Batson* objections was in error, then it is our obligation to say so and to correct that error.

Defendant argues that the prosecutor misinterpreted the record when it described for the trial court the answers given by juror number 6 and that, in doing so, she misrepresented the record to the court, a factor that we should consider, citing *Flowers v. Mississippi*, ___ US ___, ___, 139 S Ct 2228, 2243, 204 L Ed 2d 638 (2019). The state agrees that under *Flowers*, a "series of factually inaccurate explanations for striking black prospective jurors" can supply evidence of "discriminatory intent," *Flowers*, 139 S Ct at 2250, but it does not agree that such a series of inaccuracies exists here. We agree with defendant that there were, in fact, discrepancies between the state's characterization of juror number 6's answers to certain questions and the answers actually given by that juror. For example, the state advised the court that in the questionnaire, "[juror number 6] didn't believe police officers to be honest. In fact, he agreed, rated it a two, that police officers often lie." In fact, juror number 6 rated police officers at a "4" for honesty on a scale of "1" (dishonest) to "5" (honest). He also rated his belief that police officers are more likely to testify truthfully than other witnesses with a "2," on a scale of "1" (strongly agree) to "4" (strongly disagree). There are other discrepancies between the answers given by juror number 6 and how the state characterized those answers for the court, none of which, separately, or together, clearly establish purposeful racial discrimination. And yet, those discrepancies are circumstances relevant to the overall *Batson* analysis.

Defendant also argues that other jurors "provided the same or, in the prosecutor's perspective, worse answers

to the questions relied on by the prosecutor," to strike juror number 6 and that that is evidence of purposeful discrimination. The state responds that "to the extent the record is even adequate for a comparative-juror analysis, defendant fails to identify any comparison that reveals purposeful discrimination." Defendant did not ask the trial court to engage in a comparative-juror analysis, but where, as here, the record allows us to do so, we will undertake such an analysis. *Vandyke*, 318 Or App at 238; *Curry*, 298 Or App at 382. In doing so, we begin by focusing on the questions and the two "main areas of concern" that the state identified about juror number 6. *See* Appendix A, Juror Comparison Table for Juror Number 6.

First, the state points to the prosecutor's concern that juror number 6 might expect the state to prove motive in order to convict the defendant of murder. Juror number 6 "strongly agreed" that the state must prove motive to convict someone of murder. He also "strongly disagreed" that, if convinced by the evidence that someone is guilty of murder, he could find them guilty even if he does not know all the facts that led to the murder, and he "strongly disagreed" that "murder is murder, and understanding motives and circumstances are not necessary in determining guilt." A review of the questionnaires completed by the non-Black jurors who were not stricken from the jury reveals that three also strongly agreed that the state must prove motive to convict someone of murder. Four non-Black jurors strongly disagreed that, if convinced by the evidence that someone is guilty of murder, they could find him guilty even if they do not know all of the facts that led to the murder. Six non-Black jurors "strongly disagreed" that "murder is murder, and understanding motives and circumstances are not necessary in determining guilt." While none of the non-Black jurors answered each of those three questions exactly the same as juror number 6, two of them answered two of the three questions just as juror number 6 did. Juror number 6 and 13 other non-Black jurors who were not excluded "strongly agreed" that a defendant is innocent unless the state proves otherwise; one non-Black juror "agreed" with that statement; and one non-Black juror "disagreed."

Next, the state was concerned that juror number 6 did not regard police officers to be honest. As noted earlier, there were some discrepancies between the juror's responses to questions bearing on his view of police officers and the way in which those answers were characterized for the trial court. Juror number 6 agreed that police officers are honest, and six non-Black jurors who were not excused from the jury also rated their view of police officer honesty at a "4"— meaning that they agreed that police officers are honest. Juror number 6 and seven non-Black jurors who were not excused from the jury agreed that police officers are more likely to testify truthfully than other witnesses. More important to our *Batson* analysis, two of those seven non-Black jurors who remained on the jury agreed, along with juror number 6, that police officers often lie.

Finally, the state expressed concern about juror number 6's "skepticism regarding scientific evidence." In particular, the state noted that juror number 6 agreed that "DNA evidence is not reliable," and he agreed that "doctors often get it wrong." It is accurate that no non-Black juror agreed that DNA evidence is unreliable, but this was not a case that involved DNA as evidence of identity or any other key issue. And one non-Black juror also agreed that doctors often get it wrong. Defendant points out that juror number 6 and six other jurors who were not removed from the jury strongly agreed with the statements that doctors are honest, and that forensic evidence is more persuasive than eyewitness testimony. Three jurors who rated DNA evidence as reliable also disagreed with the statement that forensic evidence is more persuasive than eyewitness testimony. Three others strongly disagreed with that statement. Thus, juror number 6 gave answers that reflect both skepticism and trust regarding scientific evidence as did some non-Black jurors who were not stricken by the state through use of its peremptories.

The answers relied on by the state as race-neutral reasons for using one of its peremptory strikes against juror number 6 reflect that the juror's personal views on police officers and doctors, and his views on the type of evidence and level of proof needed for a conviction in a murder case

are similar to the answers given by non-Black jurors who were not stricken from the jury. It is certainly challenging to understand why the state would strike juror number 6 but not, for example, juror number 32, who strongly agreed that the state must prove motive in a murder case, and who strongly disagreed that he would be able to find someone guilty of murder without knowing the facts that led up to the murder—even with convincing evidence of murder. It is likewise difficult to understand why juror number 6 was stricken but juror number 31 was not stricken even though juror number 31 agreed that the state had to prove motive, disagreed that he could find someone guilty of murder despite convincing evidence if he did not know all the facts leading up to the murder, disagreed that forensic evidence is more persuasive than eyewitness testimony, and agreed that doctors often "get it wrong."

To summarize, when consulting the record before it at the point when the *Batson* challenge to juror number 6 was made, the following basic information had been brought to the attention of, and was available to, the trial court:

- Defendant is Black;

- Juror number 6 is Black;

- There are two jury panel members who are Black;

- The state passed juror number 6 for cause;

- Of the 10 questions and answers highlighted by the state as providing race-neutral reasons to remove juror number 6 from the jury, there were other jurors who were not Black and who were not stricken from the jury who had answered eight of those questions the same way as juror number 6;

- Juror number 6 was the only juror to agree with the statement that DNA evidence is unreliable;

- Juror number 6 answered questions relating generally to forensic and medical evidence the same as some non-Black jurors who were not stricken from the jury;

- The exhibit list included photos, medical records, an autopsy report, and forensic lab reports; DNA evidence is not mentioned;

- Juror number 6 "strongly agreed" that every defendant is innocent unless the state proves otherwise, while one non-Black juror disagreed with that statement and one non-Black juror strongly disagreed with it;

- Juror number 6 was the only juror to answer "very difficult" to the question about how difficult it would be to presume a person is innocent who is charged with killing his daughter;

- The state mischaracterized some of the answers given by juror number 6 in its argument to the trial court;

- Juror number 6 acknowledged during *voir dire* that it was "possible" he might "self-impose" a higher standard in a case like this; and

- Juror number 6 wore a shirt with the words "I have issues" written on it.

On answers for which the state criticized juror number 6, other jurors gave similar answers. And as to the two questions on which juror number 6 gave unique answers—(1) DNA evidence was not material and other answers that reflected views more generally about scientific evidence were similar to answers given by non-Black jurors, and (2) this juror's difficulty in presuming the innocence of a father accused of killing his daughter would seem to favor the state. To be sure, the state could have objected that a juror biased toward conviction is still improperly biased, but that was not a reason the state offered to explain its challenge to the juror, so we do not consider it. Given that the state characterized some of the answers of juror number 6 inaccurately and given that the state criticizes answers given by juror number 6 that are the very same answers given by some other non-Black jurors, we are not persuaded that the record is sufficient to support the plausibility of the state's justification for its challenge to juror number 6. And

in this instance, "all the circumstances" as to juror number 6 includes the state's challenge to juror number 9. Ultimately, the "plausibility" of the state's justifications as to both jurors determines the issue of purposeful discrimination.

We move to the state's use of an available peremptory challenge to strike juror number 9 from the jury. *See* Appendix B, Juror Comparison Table for Juror Number 9.

This is the dialogue that took place with respect to defendant's *Batson* challenge:

"[PROSECUTOR]:   Thank you, Judge. The State would move to excuse Number 9, * * *.

"THE COURT:    Okay. And then for the Defense?

"[DEFENSE COUNSEL]:    Again, we're making a *Batson* challenge. [Juror number 9] is the only other Black person on this jury, Your Honor.

"[PROSECUTOR]:    So, Judge, I think there has to be more of a showing from the Defense. But regardless, [juror number 9], in his jury questionnaire indicated he had no experience with children. He leaned towards strongly agreeing that he believes that in our criminal justice system that innocent people are routinely being found guilty. He indicated yesterday that he would have concerns about police investigation if there were the notion that they just simply didn't do their job, or they were too busy to do their job. He indicated he would, on the questionnaire, need to know about particular facts or circumstances leading up to a murder in order to find someone guilty. Or if he otherwise believes them to be guilty, he would still want to know the facts or circumstances leading up to that.

"And then yesterday, he indicated that he was more likely to excuse behavior if the child was injured due to reckless conduct as opposed to intentional. There was quite a long discussion about that issue. And he was one of the few that actually volunteered and commented on a distinction in his mind between looking more—less concerned about conduct that's—that occurred recklessly versus intentionally to injuring this child.

"The Court's aware that the State—the State believes a juror could be bias[ed] one way or another. The State's not obligated to make a for-cause challenge. I don't think

anything he said would rise to the level of a for-cause challenge, which is why we did not make that motion for [juror number 9] or for [juror number 6]. But, nonetheless, given those reasons, the State has concerns about his ability to be fair and impartial on this particular case, given the information the Court knows about the nature of this case.

"[DEFENSE COUNSEL]:   I think that the selection by the State to eliminate the only two Black potential jurors in the jury pool is clearly a *Batson* issue for this Court. It does violate my client's constitutional right to have a jury of his peers. There was nothing in his answers to indicate that he would not follow the law or that he had a particular bias one way or the other.

"With regards to his specific answers on the questionnaire, he works for the U.S. Postal Service, has trust for both the police and for the justice system. He did indicate that sometimes innocent people can be found guilty, but it is not okay to use corporal punishment. He indicated, very clearly, that he would understand the reasonable doubt that has to be shown by the Court—or by the Prosecution. And it would eliminate the only other Black juror.

"THE COURT:   Okay. So based on the entire record that we have here, again, the State has articulated reasons for their challenges to the particular juror that indicate there is not a *Batson* violation here. And so we'll allow the State's challenge here."

Of the non-Black jurors who had been passed for cause, five answered that they had no experience with children. One other juror indicated that they agreed that innocent people are frequently found guilty in our justice system, and one wrote that "[i]t does happen, but I don't know how frequently." Juror number 9 and three non-Black jurors "disagreed" that if they are convinced by the evidence that someone is guilty of murder, they could find that person guilty if they did not know all of the facts that led to the murder; and four non-Black jurors "strongly disagreed" with that statement. With respect to concerns about statements made by juror number 9 during the *voir dire* process in the courtroom, we cannot conclude based on the record that juror number 9 responded as the prosecutor argued he did. The record does reflect discussion among counsel and various jurors about differences between accidents and

intentional acts and about whether police sometimes get too busy to conduct adequate investigations.

To summarize, when consulting the record before it at the point when the *Batson* challenge to juror number 9 was made, the following basic information had been brought to the attention of, and was available to, the trial court:

- Defendant is Black;

- Juror number 9 is Black;

- Juror number 6, who is Black, had been excused on the state's peremptory strike, leaving juror number 9 as the only Black panel member left;

- The state passed juror number 9 for cause; and

- At least one non-Black juror answered each of the questions highlighted by the state the same way as juror number 9 did.

Like juror number 6, some non-Black jurors gave answers that were the same or similar to answers given by juror number 9. And, as the state correctly notes, no "single answer can[] be viewed in isolation." The answers to some questions provide context for the answers to other questions; sometimes answers appear to be consistent with other answers and yet some seem to be in direct conflict with others. But that was predictable just given the sheer volume of questions included in the questionnaire. Considering, as we must, the race-neutral reasons given by the state in support of its use of a peremptory strike against juror number 9, there were two important factors present at that point in the jury selection process that had not been present when the state explained its use of a peremptory strike against juror number 6: (1) no answer given by juror number 9 was his alone—in other words, no one answer caused him to stand out from the other jurors, and (2) the state had already stricken the only other Black juror from the panel. And while one might debate whether it takes two, three, or more of anything to create a pattern, the use of a peremptory challenge to strike the second and only remaining Black juror from the jury completes the pattern here.

Peremptory strikes are a tool entrusted to trial lawyers by statute; they are not a matter of constitutional right. Chief Justice Rehnquist agreed that "prosecutors' peremptories are based on their 'seat-of-the-pants instincts' as to how particular jurors will vote"; instincts that Justice Thurgood Marshall warned "may often be just another term for racial prejudice." *Batson*, 476 US at 106 (Marshall, J., concurring). As Justice O'Connor described it,

> "In both criminal and civil trials, the peremptory challenge is a mechanism for the exercise of *private* choice in the pursuit of fairness. The peremptory is, by design, an enclave of private action in a government-managed proceeding."

*Edmonson v. Leesville Concrete Co.*, 500 US 614, 633-34, 111 S Ct 2077, 114 L Ed 2d 660 (1991) (O'Connor, J., dissenting). That "private choice" may just as certainly be based upon the color of a juror's skin when it is the product of a "seat-of-the-pants" judgment call as when it is the product of a deliberate thought process. In either case, and in the absence of an admission to racial discrimination by the prosecutor, proof that the state's race-neutral explanation is pretextual is a matter of "circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Miller-El*, 545 US at 241 (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 US 133, 147, 120 S Ct 2097, 147 L Ed 2d 105 (2005) (internal quotation marks omitted). In fact, circumstantial evidence that is probative of the lawyer's intent may well be the best evidence of the lawyer's purpose that we have.

By the time the trial court was considering defendant's *Batson* objection to the state's peremptory strike against juror number 9, juror number 6—the only other Black juror on the panel—had been excused at the state's request. And although the state articulated legitimate, race-neutral reasons for striking juror number 9, those reasons were not "plausible" because there were other non-Black jurors that the state did not seek to strike who gave the same answers that the state relied on to strike juror number 9. And under *Miller-El*, it is the plausibility of the state's reasons that provides insight into whether those reasons are a pretext for race. This case is like *Curry*, where we

engaged in a comparative-juror analysis and concluded that the state's stated reasons for using a peremptory challenge against the only Black juror on the panel were a pretext for race because the state did not also seek to strike similarly situated jurors who were not Black. As we have already described, there were non-Black jurors who provided the same answers that the state offered as reasons to excuse juror number 9. That was true of juror number 6 as well. The plausibility of the state's race-neutral reasons for excusing an otherwise qualified Black juror decreased with the second strike. That implausibility is evidence of purposeful discrimination which, in light of "all of the circumstances that bear on racial animosity," leads us to the conclusion that the trial court clearly erred in excusing jurors number 6 and number 9 from the trial jury.

Reversed and remanded.

APPENDIX A

| | Question 90: Opinion as to the honesty of these groups - Scale of 1 (dishonest) to 5 (honest) | Question 117: State should be required to prove motive in order for someone to be convicted of murder Scale of 1 (strongly agree) to 4 (strongly disagree) | Question 119: If convinced by evidence that someone is guilty of murder, I could find them guilty even if I don't know all the facts that led to the murder Scale of 1 (strongly agree) to 4 (strongly disagree) | Question 120: Every Defendant is innocent unless state proves otherwise Scale of 1 (strongly agree) to 4 (strongly disagree) | Question 122: Police Officers more likely to testify truthfully than other witnesses Scale of 1 (strongly agree) to 4 (strongly disagree) | Question 137: DNA evidence is not reliable Scale of 1 (strongly agree) to 4 (strongly disagree) | Question 139: Doctors often get it wrong Scale of 1 (strongly agree) to 4 (strongly disagree) | Question 162: Police officers often lie Scale of 1 (strongly agree) to 4 (strongly disagree) | Question 167: Not comfortable deciding if person is guilty or not guilty of murder Scale of 1 (strongly agree) to 4 (strongly disagree) | Question 174: How difficult would it be for you to presume a person is innocent who is charged with killing his daughter? Very Difficult Somewhat difficult Not too difficult Not difficult at all |
|---|---|---|---|---|---|---|---|---|---|---|
| Juror 6 | Doctors: "5" Police officers: "4" Judges: "4" DA: "4" Defense lawyer: "4" | "1" | "4" | "1" | "2" | "2" | "2" | "2" | "2" | "very difficult" "Being a father with 2 daughters myself, I can't imagine what he's going through." |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Juror 31 | Doctors: "3"<br>Police officers: "3"<br>Judges: "5"<br>DA: "4"<br>Defense lawyer: "3" | "2" | "4" | "1" | "3" | "4" | "2" | "3" | "4" | "not difficult at all" |
| Juror 32 | Doctors: "5"<br>Police officers: "5"<br>Judges: "5"<br>DA: "5"<br>Defense lawyer: "5" | "1" | "4" | "1" | "3" | "3" | "3" | "4" | "4" | "not too difficult" |
| Juror 33 | Doctors: "5"<br>Police officers: "4"<br>Judges: "5"<br>DA: "3"<br>Defense lawyer: "3" | "2" | "2" | "1" | "2" | "4" | "4" | "3" | "1" | "not difficult"<br>"If a person actually committed a crime, he or she will be imposed based on the evidence presented at trial" |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Juror 1 | Doctors: "4" Police officers: "3" Judges: "5" DA: "4" Defense lawyer: "4" | "3" | "3" | "1" | "3" and wrote "I don't believe or agree with a sweeping statement about a group of people being more truthful than another group based solely upon profession." | "4" | "3" | "3" and wrote #153 - "Like #153 - some do, but I can't say how often" On #153 wrote for lawyers frequently lie to get the result they want "Some do, I'm sure, but I wouldn't agree it frequently happens." | "3" | "not too difficult" "I understand the need to make a decision based on the case alone. I am rational and able to pay attention to the evidence and arguments made." |
| Juror 2 | Doctors: "5" Police officers: "4" Judges: "5 DA: "4" Defense lawyer: "4" | "3" | "1" | "1" | "2" | "4" | "3" | "2" | "3" | "not too difficult" |
| Juror 3 | Doctors: "4" Police officers: "4" Judges: "4" DA: "4" Defense lawyer: "4" | "3" | "2" | "2" | "2" | "4" | "3" | "3" | "3" | "not too difficult" |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Juror 36 | Doctors: "5" Police officers: "5" Judges: "5" DA: "5" Defense lawyer: "5" | "1" | "1" | "1" | "4" | "4" | "4" | | "3" | "not difficult at all" "I believe in the concept of innocent until proven guilty." |
| Juror 46 | Doctors: "5" Police officers: "3" Judges: "5" DA: "4" Defense lawyer: "4" | "2" | "4" | "1" | "3" | "4" | "4" | | "3" | "somewhat difficult" "A parent should make a huge effort to protect a child under their care. There can be no excuse for killing a child." |
| Juror 44 | Doctors: "4" Police officers: "3" Judges: "5" DA: "4" Defense lawyer: "4" | "3" | "3" | "1" | "2" | "4" | "3" | "3" and underlined "often" | "3" | "somewhat difficult" "I feel if charges were brought against someone for killing a young child, there must be some evidence that will tell the |

| Juror | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Juror 35 | Did not circle any numbers and wrote "This question is silly. Honesty is dependent on the individual." | "2" | "2" | "1" | "4" | "3" | "3" | "1" | "not too difficult" "I believe myself to be an impartial person; however, the death of a child is emotional so I cannot answer absolutely. Children that are in the care of their parents should be protected by them." | story. So unfortunately I probably do go into it w/ some expectancy of guilt." |
| Juror 7 | Doctors: "4" Police officers: "4" Judges: "4" DA: "4" Defense lawyer: "4" | "2" and wrote a "?" next to the number and also wrote "not totally sure what this means" | "3" and "4" and wrote "these are tough questions" | "1" | "3" and wrote "I would hope everyone respects the law enough to testify honestly" | "4" | "3" | "3" | "4" | "somewhat difficult" "It's challenging and an emotional case, but I would try my best to be as |

| | | | | | | | | | | necessary to provide a fair trial |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Juror 10 | "1" | "3" | "1" | "3" | "3" | "3" | "3" | "3" | Doctors: "4"<br>Police officers: "3"<br>Judges: "5"<br>DA: "4"<br>Defense lawyer: "4" | "not too difficult" |
| Juror 15 | "2" | "1" | "1" | "2" | "4" | "3" | "4" | "3" | Doctors: "4"<br>Police officers: "4"<br>Judges: "5"<br>DA: "5"<br>Defense lawyer: "4" | "not difficult at all"<br><br>"Until all of the facts are presented by both the prosecutor and defense, one has to keep an open mind regarding the guilt or innocence of that person charged in the crime." |

| Juror 25 | Doctors: "5" Police officers: "4" Judges: "5" DA: "5" Defense lawyer: "4" | "2" | "4" | "1" | "2" | "4" | "3" | "2" | "2" | "not difficult at all" |
|---|---|---|---|---|---|---|---|---|---|---|
| Juror 26 | Doctors: "4" Police officers: "3" Judges: "4" DA: "4" Defense lawyer: "3" | "2" | "2" | "3" | "2" | "4" | "3" | "3" | "1" | "somewhat difficult" "I imagine that someone did indeed hurt that baby girl. I feel curious why there are no cases against other individuals in the child's life." |

# APPENDIX B

| | Question 7: Have you, or has anyone close to you, ever worked with children or volunteered to work with children? "Yes, I worked with children" "Yes, I volunteered to work with children" "Yes, someone close worked with children" "no" | Question 119: If convinced by evidence that someone is guilty of murder, I could find them guilty even if I don't know all the facts that led to the murder. Scale of 1 (strongly agree) to 4 (strongly disagree) | Question 124: Innocent people are frequently found guilty in our system of justice. Scale of 1 (strongly agree) to 4 (strongly disagree) |
|---|---|---|---|
| Juror 9 | Circled "someone close worked with children" | "3" | "2" |
| Juror 31 | Circled "worked with children" | "4" | "3" |
| Juror 32 | Circled all three "yes" answers | "4" | "4" |
| Juror 33 | "no" | "2" | "4" |
| Juror 1 | Circled "worked with children" and "volunteered to work with children" | "3" | "3" and Hand wrote "It does happen, but I don't know how frequently." |
| Juror 2 | Circled "worked with children" and "volunteered to work with children" | "1" | "3" |
| Juror 3 | Circled "volunteered to work with children" | "2" | "3" |
| Juror 36 | Circled "someone close worked with children" | "1" | "4" |
| Juror 46 | Circled "no" | "4" | "4" |
| Juror 44 | Circled "someone close worked with children" | "3" | "3" |
| Juror 35 | Circled "no" | "2" | "3" |
| Juror 7 | Circled "worked with children" and "someone close worked with children" | "3" and "4" and wrote "these are tough questions" | Hand wrote "I don't know enough about court cases to know this" "3" |
| Juror 10 | Circled "no" | "3" | "3" |
| Juror 15 | Circled "someone close worked with children" | "1" | "3" |
| Juror 25 | Circled "no" | "4" | "2" |
| Juror 26 | Circled "worked with children", "volunteered to work with children", and "someone close worked with children" | "2" | "3" |